IN THE MATTER OF PATRICK E. PAVILONIS, AN
ATTORNEY AT LAW.

November 27, 1984.

## ORDER

The Disciplinary Review Board having filed a report recommending that PATRICK E. PAVILONIS of BROOMALL, PENNSYLVANIA, be disbarred from the practice of law based upon his disbarment by the Supreme Court of Pennsylvania, and an order to show cause why respondent should not be disbarred having been issued by this Court, and respondent having made no appearance on the return date, and good cause appearing;

It is ORDERED that the report of the Disciplinary Review Board is hereby adopted and, pursuant to *R.* 1:20-7, which deals with reciprocal discipline, PATRICK E. PAVILONIS is suspended from the practice of law for so long as he remains disbarred in Pennsylvania and until further Order of this Court, effective immediately;  and it is further

ORDERED that respondent may make application for reinstatement if he is fully restored to the practice of law in Pennsylvania;  provided, however, that in no event may such an application be made before five years have passed from the date of this Order;  and it is further

ORDERED that respondent is restrained and enjoined from practicing law during the period of his suspension;  and it is further

ORDERED that respondent comply with Regulation 23 of the Office of Attorney Ethics and that he reimburse the Office of Attorney Ethics for the administrative costs of this matter.

### Report and Recommendation of the
### Disciplinary Review Board

This matter is before the Board on a motion by the Office of Attorney Ethics for reciprocal disciplinary action. This notice of motion is based on Respondent's disbarment in Pennsylvania, effective December 19, 1983, for taking the Pennsylvania Bar examination on behalf of his wife, Dorila Yvonne Katz (Katz), by posing as Katz and using her assigned applicant number on July 28 and 29, 1981.

Respondent was admitted to the Bar of New Jersey with a limited license on June 18, 1981 and was granted a plenary license on December 21, 1981. He was admitted to the Bar of Pennsylvania on May 6, 1981.

Among the findings of fact by the Pennsylvania Disciplinary Board were:

> The Respondent married Dorila Yvonne Katz in August 1980 and was married to her during the relevant events of these charges.

> On July 29-30, 1980, Katz took the Pennsylvania Bar examination in Philadelphia and failed. On February 24-25, 1981, Katz took the Pennsylvania Bar examination in Philadelphia for the second time and once again failed. In early June 1981, Katz applied to take the Pennsylvania Bar examination for the third time, this time in Pittsburgh, Pennsylvania. Katz paid an additional fee of $100 and was granted permission to take the July 1981 Bar examination and was assigned applicant number 548.

> The Respondent and Katz travelled to Pittsburgh together and arrived there on Sunday night, July 26, 1981. Respondent testified that because of apparently serious emotional difficulties resulting from the death of a relative and his wife's inability to pass the Bar examination, Katz was in a very difficult emotional state and asked if Respondent "could take" the Bar examination on her behalf. At some time on either July 26 or July 27, 1981, Respondent agreed to do so knowing full well that it was a wrongful act in violation of the Code of Professional Responsibility and a fraud upon the admission procedures of the Supreme Court of Pennsylvania and the Board of Law Examiners. Respondent also knew that he was jeopardizing his own professional career by taking the examination on behalf of Katz.

> On July 28 and 29, 1981, Respondent used Katz's admission letter and applicant number and took the Pennsylvania Bar examination on her behalf, representing

himself as applicant number 548. Respondent placed Katz's assigned number 548 on each of the eight essay booklets on July 28, 1981. Respondent also placed Katz's assigned number as well as her birthdate on the multi-state Bar examination sheets on July 29, 1981. Respondent achieved a very high score on the multi-state portion of the Bar examination which ranked him 36th out of approximately 1,800 persons taking the examination (numerical paragraph headings omitted).

Katz did not disclose the cheating on the Bar examination and also had denied cheating on the examination during two meetings with investigators from the Pennsylvania Attorney General's office. Respondent did not voluntarily disclose to the Pennsylvania Board of Law Examiners or the Pennsylvania Attorney General's office that Katz had not taken the examination and that he had taken it for her. In response to questions from the Pennsylvania Disciplinary Counsel on July 9, 1982, Respondent disclosed that he had taken the examination on his wife's behalf. On January 27, 1983, he reiterated his admissions fully and openly on the record at the Pennsylvania Disciplinary hearing.

The majority of the Pennsylvania Disciplinary Board held that Respondent had violated *DR* 1–102(A)(3), (4), (5), and (6). The Board also found that Respondent violated *DR* 1–101(B), "which requires that a lawyer shall not further the application for admission to the Bar of another person known by him to be unqualified in respect to character, education, or other relevant attribute [.]" The Board found no violation as to *DR* 1–103(A), "which requires an attorney possessing unprivileged knowledge of a violation of *DR* 1–102 to report said knowledge to a tribunal or other authority empowered to investigate or act upon such violation."

The Pennsylvania Disciplinary Board recommended to the Pennsylvania Supreme Court that Respondent receive a suspension for three years. The dissent recommended that Respondent be disbarred. By order dated December 19, 1983, the Pennsylvania Supreme Court disbarred Respondent. Two members of that Court dissented and would have accepted the

Disciplinary Board's recommendation of a three-year suspension.

## CONCLUSIONS AND RECOMMENDATIONS

■ When a New Jersey attorney who also is admitted to practice in another jurisdiction is disciplined in that jurisdiction, the other jurisdiction's findings of misconduct will be accepted by the New Jersey Supreme Court in a proceeding under the New Jersey Disciplinary Rules. *In re Kaufman*, 81 *N.J.* 300, 302 (1979).

■ Lawyers are representatives of a profession and officers of the Supreme Court. *In re Wilson*, 81 *N.J.* 451, 458 (1979). The standard of conduct demanded of members of the Bar is not subjective but objective. *In re Makowski*, 73 *N.J.* 265, 270 (1977).

Respondent was granted the privilege of a limited license to practice law in this State on June 18, 1981. In little over a month's time, he committed an act that did not advance the good image of the New Jersey Bar; he committed an act that tarnished that image. He committed an act of dishonesty, fraud and deceit in violation of *DR* 1–102(A)(4) when he falsely represented himself as his wife and took the Pennsylvania Bar examination for her. His act prejudiced the administration of justice, *DR* 1–102(A)(5), and his conduct adversely reflects on his fitness to practice law, *DR* 1–102(A)(6). He also failed to maintain the integrity and competence of the legal professional by permitting an unqualified person to be admitted to the Bar. *DR* 1–101(B).

■ The purpose of discipline is not to punish the offender. It is to protect the public from the attorney who does not meet the standards of responsibility of every member of the profession. *In re Goldstaub*, 90 *N.J.* 1, 5 (1982); *In re Stout*, 75 *N.J.* 321, 325 (1978).

██ Respondent was disbarred in Pennsylvania. Disbarment there, however, is not an absolute bar to reinstatement as it is ·here. A disbarred attorney in Pennsylvania may apply for reinstatement five years and one month after the effective date of disbarment. See P.R.D.E. Rule 218(b) and (b)(3)(i); *In re Tumini*, 95 *N.J.* 18, 22 (1983). Unless there is good reason to the contrary, the discipline accorded in New Jersey will ordinarily correspond with that imposed in the other jurisdiction. *In re Kaufman, supra*, 81 *N.J.* at 303.

██ Mitigating factors are relevant in determining whether the public interest requires the ultimate sanction of disbarment. *In re Hughes*, 90 *N.J.* 32, 36 (1982). Respondent did not file an answer to the notice of motion by the Office of Attorney Ethics for reciprocal discipline by this State. He, also, did not appear before this Board to explain or comment on his actions when the matter was heard on May 16, 1984.

> No man can ever be a truly great lawyer, who is not in every sense of the word, a good man ....
>
>> There is no profession in which moral character is so soon fixed as in that of the law; there is none in which it is subjected to severer scrutiny by the public ....
>
> From the very commencement of a lawyer's career, let him cultivate, above all things, truth, simplicity and candor; they are the cardinal virtues of a lawyer. G. Sharswood, *Professional Ethics* 168, 169 (1844).
>
> Few vocations offer as great a spectrum for good and honorable works as does the legal profession. The attorney is entrusted with the life savings and investments of his clients. He becomes the guardian of the mentally deficient, and potential savior for the accused. He is a fiduciary, a confidant, an advisor, and an advocate. However, the great privilege of serving in all of these capacities does not come without the concomitant responsibilities of truth, candor and honesty. In fact, it can be said that the presence of these virtues in members of the Bar comprises a large portion of the fulcrum upon which the scales of justice rest. Consequently, an attorney's character must remain beyond reproach. [*Maryland State Bar Association, Inc. v. Agnew*, 271 *Md.* 543, 318 *A.*2d 811, 814 (Ct.App.1974)].

██ The Board finds that Respondent's conduct constituted an egregious act of misconduct which disgraced the profession of law. His act of forgery and misrepresentation, while not for

pecuniary gain, nevertheless displayed a contempt for the moral character that should guide each member of the Bar.

The Board recommends that Respondent be disbarred. See *In re Tumini, supra,* 95 *N.J.* 18 (1983) and *In re Keesal,* 76 *N.J.* 227 (1978) where attorneys were disbarred in this State after being disbarred in Pennsylvania.

The Board further recommends that Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.