405 S.E.2d 242

The **COMMITTEE ON LEGAL ETHICS OF THE WEST VIRGINIA STATE BAR**, Complainant,

v.

Geary M. **BATTISTELLI**, Respondent.

No. 19874.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 5, 1991.

Decided May 1, 1991.

Sherri D. Goodman, West Virginia State Bar, Charleston, for complainant.

Geary M. Battistelli, pro se.

MILLER, Chief Justice:

This is an attorney disciplinary proceeding pursuant to the reciprocal discipline provisions of Article VI, Section 28–A of the By–Laws of the West Virginia State Bar. The United States Court of Appeals for the Fourth Circuit (Court of Appeals) found that the respondent, Geary M. Battistelli, had misrepresented facts in an appeal before that court and ordered him to

pay double the costs of the appeal. The Committee on Legal Ethics of the West Virginia State Bar (Committee) now asks us to impose a fine in the same amount, to issue a public reprimand, and to charge the respondent with the costs of these proceedings. The respondent contests the Committee's right to impose reciprocal discipline in this case or to impose additional discipline in the form of a public reprimand.

## I.

The respondent is an active member of the West Virginia State Bar engaged in the practice of law in Wheeling. These proceedings arose out of his representation of Carl and Loretta Holcomb, the plaintiffs in a civil action involving wrongful discharge and related claims brought in the United States District Court for the Southern District of West Virginia. When the District Court granted summary judgment in favor of the employer, the respondent prosecuted an appeal to the Court of Appeals on behalf of his clients. One of the issues presented was the effect of an adverse determination by a labor arbitrator in a related proceeding.

On July 29, 1988, the Court of Appeals issued an opinion affirming the judgment of the District Court. *Holcomb v. Colony Bay Coal Co.*, 852 F.2d 792 (4th Cir.1988). The Court of Appeals also concluded, however, that the respondent had "misstated the record both in his brief and in oral argument in an attempt to mislead this court with regard to the content and import of the Arbitrator's Opinion." 852 F.2d at 797. Pursuant to federal court rules, the respondent was ordered to pay double the costs of the appeal, or $286.80.

On or about September 9, 1988, the respondent filed with the Court of Appeals a verified motion for reconsideration in which he opposed the imposition of sanctions. The respondent asserted that the court's findings of misrepresentation in his brief

and oral argument were too vague to allow him to respond in a meaningful way. He requested a more specific statement of the allegations. By order dated December 5, 1988, the Court of Appeals denied the motion for reconsideration.

By letter dated December 7, 1988, the Court of Appeals notified this Court of the disciplinary action taken against the respondent. The matter was referred to the State Bar for investigation and a recommendation as to imposition of reciprocal discipline pursuant to Article VI, Section 28–A of the State Bar By–Laws. By agreement, the matter was submitted to the Hearing Panel for decision on the briefs and exhibits of the parties. In a complaint filed with this Court on November 19, 1990, the Committee recommended that the respondent be publicly reprimanded, fined $286.80, and charged with the costs of these disciplinary proceedings.

## II.

At issue in this case are the reciprocal discipline provisions of Article VI, Section 28–A of the State Bar By–Laws. These provisions are of relatively recent origin [1] and have never been applied by this Court. Consequently, we start with an overview of this section of the State Bar By–Laws.

Article VI, Section 28–A permits the Committee to discipline members of the State Bar against whom disciplinary action has been taken by other jurisdictions. Although this provision contains a number of subsections, some of which may appear contradictory, a careful reading of the entire provision reveals a logical pattern. [2]

Article VI, Section 28–A(a) provides that a final adjudication of professional misconduct in another jurisdiction conclusively establishes the fact of such misconduct for purposes of reciprocal disci-

---

1. Article VI, Section 28–A was adopted by order of this Court dated April 22, 1986, to take effect on May 1, 1986.

2. In interpreting administrative regulations, we follow our general rule of statutory construc-

tion which requires us to give effect to the entire statute. *See State ex rel. Fetters v. Hott,* 173 W.Va. 502, 318 S.E.2d 446 (1984); *Soto v. Hope Natural Gas Co.,* 142 W.Va. 373, 95 S.E.2d 769 (1956).

plinary proceedings here.[3] Subsection (b) places an affirmative duty on a lawyer to report the fact that he has been publicly disciplined or required to surrender his license to practice in a foreign jurisdiction.[4] Article VI, Sections 28–A(c) and (d) require bar counsel either to investigate the foreign disciplinary action or to secure a copy of the disciplinary order and then to refer the matter to the Hearing Panel.[5] Subsection (d) also indicates that the lawyer may challenge the validity of the foreign disciplinary order.[6] However, under Article VI, Section 28–A(e), the attorney's right to challenge the disciplinary action of a foreign jurisdiction is limited to the four grounds listed therein. Subsection (e) provides that at the conclusion of the proceedings the Committee "shall refer the matter to the supreme court of appeals with the recommendation that the same discipline be imposed" unless (1) the procedure followed in the other jurisdiction violated due process; (2) there was a total infirmity of proof of misconduct; (3) imposition of the same discipline would result in a grave injustice; or (4) the misconduct warrants a substantially different type of discipline.[7] Article VI, Section 28–A is similar to Rule 22 of the *ABA Model Rules for Lawyer Disciplinary Enforcement* (1989), the stated purpose of which is not to punish the lawyer, but to protect the public.[8] *See also*

3. Article VI, Section 28–A(a) states: "A final adjudication in another jurisdiction of misconduct constituting grounds for discipline of a lawyer shall, for the purposes of proceedings pursuant to this article conclusively establish such misconduct. The Hearing Panel may take action without holding a formal hearing."

4. Article VI, Section 28–A(b) provides:
   "Any lawyer who is a member, active or inactive, of the West Virginia State Bar against whom any form of public discipline has been imposed by the authorities of another jurisdiction, or who voluntarily surrenders his license to practice law in connection with disciplinary proceedings in another jurisdiction, shall notify bar counsel or committee counsel of such action in writing within ten days thereof."
   The Committee found that the respondent's failure to comply with this provision should be excused.

5. Article VI, Section 28–A(c) and (d), in part, provide:
   "(c) Upon receiving notice that a lawyer who is a member, active or inactive, has voluntarily surrendered his license to practice law in another jurisdiction, bar counsel or committee counsel shall, following investigation pursuant to this article, refer the matter to the Hearing Panel for appropriate action. "(d) Upon receiving notice that a lawyer who is a member active or inactive, of the West Virginia State Bar, has been publicly disciplined in another jurisdiction, the committee counsel shall obtain that disciplinary order and shall refer the matter to the Hearing Panel for appropriate action."

6. The second paragraph of Article VI, Section 28–A(d) provides:
   "If the lawyer intends to challenge the validity of the disciplinary order entered in the foreign jurisdiction, he must request a formal hearing and file with bar counsel or committee counsel a full copy of the record of the disciplinary proceedings which resulted in the imposition of the disciplinary order."

7. Article VI, Section 28–A(e) states:
   "At the conclusion of proceedings brought under this section, the Hearing Panel shall refer the matter to the supreme court of appeals with the recommendation that the same discipline be imposed by the supreme court as was imposed by the foreign jurisdiction unless it is determined by the Hearing Panel or the court that:
   "(1) The procedure followed in the foreign jurisdiction did not comport with the requirements of due process of law; or
   "(2) The proof upon which the foreign jurisdiction based its determination of misconduct is so infirm that the supreme court cannot, consistent with its duty, accept as final the determination of the foreign jurisdiction; or
   "(3) The imposition by the supreme court of the same discipline imposed in the foreign jurisdiction would result in grave injustice; or
   "(4) The misconduct proved warrants that a substantially different type of discipline be imposed by the supreme court."

8. In the Commentary accompanying the text of Rule 22, the drafters state:
   "If a lawyer suspended or disbarred in one jurisdiction is also admitted in another jurisdiction and no action can be taken against the lawyer until a new disciplinary proceeding is instituted, tried, and concluded, the public in the second jurisdiction is left unprotected against a lawyer who has been judicially determined to be unfit. Any procedure which so exposes innocent clients to harm cannot be justified. The spectacle of a lawyer disbarred in one jurisdiction yet permitted to practice elsewhere exposes the profession to criticism and undermines public confidence in the administration of justice."

*Selling v. Radford,* 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917); *In re Evans,* 834 F.2d 90 (4th Cir.1987); *Wrighten v. United States,* 550 F.2d 990 (4th Cir.1977).

## III.

The respondent here contends that reciprocal discipline under Article VI, Section 28–A is not warranted in this case because one or more of the exceptions listed in Subsection (e) clearly exist. Consequently, he argues, this Court should refuse to impose the same discipline imposed by the Court of Appeals.

## A.

■ The respondent first argues that reciprocal discipline is unwarranted in this case because the proof of misconduct upon which the Court of Appeals relied was insufficient to support its finding. The respondent asserts that there was no evidence that the misstatement in his brief, which he repeated in his oral argument before the Court of Appeals, was intended to mislead the court so as to warrant the imposition of sanctions.

As we have already noted, under Article VI, Section 28–A(a), the federal court's disciplinary adjudication conclusively establishes the respondent's misconduct. Other jurisdictions with similar reciprocal discipline rules have concluded that this provision precludes relitigation of the charges. *See, e.g., In re Loigman,* 582 A.2d 1202 (D.C.App.1990); *Attorney Grievance Comm'n v. Sparrow,* 314 Md. 421, 550 A.2d 1150 (1988); *State ex rel. Nebraska State Bar Ass'n v. Dineen,* 235 Neb. 363, 455 N.W.2d 178 (1990). *See also* Rule 22, *ABA Model Rules of Lawyer Disciplinary Enforcement* (1989); 7 Am.Jur.2d *Attorneys at Law* § 34 (1980). We cannot interfere with the decision of the Court of Appeals on grounds of insufficient evidence unless the proof of misconduct upon which the federal court relied "is so infirm that the supreme court cannot, consistent with its duty, accept as final" the Court of Appeals' determination. Article VI, Section 28–A(e)(2).

The record here shows that under the terms of a collective bargaining agreement, Mr. Holcomb could be fired from his job only for "just cause." In his brief to the Court of Appeals, the respondent challenged the arbitration decision that Mr. Holcomb's discharge was proper on the ground that while the arbitrator had cited the "just cause" provision of the contract, "there is no showing that he looked to the words 'just cause' in rendering and writing his *Opinion* in this case.... Certainly, the opinion section of the award contains no arbitral citation to the words 'just cause'."

The record also demonstrates, however, that the arbitrator plainly found the existence of just cause for Mr. Holcomb's dismissal. As the Court of Appeals noted, the arbitrator used the words "just cause" elsewhere in his opinion and, after having disposed of other issues,

> "wrote 'that leaves us to the last item: whether the conduct of the employee was defensible and the discipline penalty just?' The arbitrator concluded that Holcomb's refusal to obey 'a direct Company order when he had been informed of the consequences is insubordinate conduct subject to termination and is an appropriate penalty[.]'" 852 F.2d at 796.

We cannot say that this evidence is so infirm as to justify our not accepting as final the Court of Appeals' conclusion that the misstatements in the respondent's brief and oral argument were intended to misrepresent the substance of the arbitration decision. In view of the record before this Court, we conclude that Article VI, Section 28–A(e)(2) provides no basis for not imposing reciprocal discipline.

## B.

■ The respondent next contends that the procedure followed by the Court of Appeals was deficient. The respondent notes that he was never given an opportunity for a hearing and argues that this omission violates the federal court's own rules and regulations and constitutes a denial of due process of law. Consequently, the respondent asserts, Article VI, Section

28–A(e)(1) precludes us from giving effect to the federal court's disciplinary action.

We have recognized that in attorney disciplinary proceedings, a lawyer is entitled to due process of law. *See Committee on Legal Ethics v. Folio*, 184 W.Va. 503, 401 S.E.2d 248 (1990); *Committee on Legal Ethics v. Boettner*, 183 W.Va. 136, 394 S.E.2d 735 (1990). Generally, due process requires that the attorney be given notice of the allegations against him and an opportunity to be heard. *Rosenthal v. Justices*, 910 F.2d 561 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 963, 112 L.Ed.2d 1050 (1991); *Standing Comm. on Discipline v. Ross*, 735 F.2d 1168 (9th Cir.), *appeal dismissed, cert. denied*, 469 U.S. 1081, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984); *Louisiana State Bar Ass'n v. Keys*, 567 So.2d 588 (La.1990); *State ex rel. Nebraska State Bar Ass'n v. Dineen, supra. See In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). *See generally* 7 Am.Jur.2d *Attorneys at Law* § 91 (1980); Annot., 98 L.Ed. 851 (1954). In addition, Rule 46(c) of the Federal Rules of Appellate Procedure gives the court the right to take disciplinary action "after reasonable notice and an opportunity to show cause to the contrary, and after hearing, if requested[.]" [9]

The respondent argues that the Court of Appeals did not offer him an opportunity to demonstrate that discipline was not warranted in this case. The record shows, however, that the respondent filed a verified motion for reconsideration shortly after the court's decision. The respondent did not allege in that motion that the Court of Appeals had denied him due process or disregarded its own rules and regulations by failing to afford him a hearing.[10] There is no record that the respondent ever requested a hearing from the federal court on either the disciplinary action or the motion for reconsideration or that he appealed the denial of his motion for reconsideration.

The Supreme Court of Wisconsin faced a similar situation in *In the Matter of Disciplinary Proceedings Against Brickle*, 135 Wis.2d 355, 400 N.W.2d 464 (1987). Attorney Brickle had been admitted to practice in both Wisconsin and Virginia. After signing an affidavit admitting wrongdoing in his capacity as co-administrator of an estate in Virginia, the attorney wrote a letter resigning from the Bar of that state. Under Virginia rules, this resignation amounted to an admission of misconduct, and the attorney's license to practice law in Virginia was summarily revoked. When the Wisconsin authorities recommended revocation of his license there under a reciprocal discipline rule similar to Article VI, Section 28–A, the attorney resisted, arguing that the Virginia procedure violated due process and precluded the imposition of reciprocal discipline.

The Wisconsin court in *Brickle* started with the proposition that "[t]he lack of notice or opportunity to be heard alone does not make the reciprocal discipline rule unwarranted; the lack of notice or opportunity to be heard must be such as to constitute a deprivation of due process." 135

**9.** Rule 46(c) provides:
"*Disciplinary Power of the Court over Attorneys.* A court of appeals may, after reasonable notice and an opportunity to show cause to the contrary, and after hearing, if requested, take any appropriate disciplinary action against any attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with these rules or any rule of the court."
Rules 46.6.a.(3) and (4) of the court's Internal Operating Procedures also state grounds for attorney discipline:
"A member of the bar of this Court may be disciplined by this Court as a result of
\* \* \* \* \* \*
"(3) conduct with respect to this Court which violates the rules of professional conduct or responsibility in effect in the state or other jurisdiction in which the attorney maintains his or her principal office, the Federal Rules of Appellate Procedure, the local rules and internal operating procedures of this Court, or orders or other instructions of this Court; or
"(4) any other conduct unbecoming a member of the bar of this Court."

**10.** In his motion for reconsideration, the respondent did question the adequacy of the notice given by the Court of Appeals. The respondent has since abandoned this claim and, in this appeal, focuses his argument entirely on the court's failure to afford him a hearing.

Wis.2d at 363, 400 N.W.2d at 467. The court then noted that the attorney had had reason to believe that allegations of his misconduct had been filed with the Virginia State Bar and that he neither appealed nor filed a motion for reconsideration of the Virginia revocation order. Furthermore, the attorney never raised in Virginia the due process argument he relied on in the Wisconsin proceedings. The court concluded that the attorney had had an adequate opportunity to argue a due process violation in the Virginia proceedings. Having failed to do so, he had waived the right to raise the issue in subsequent proceedings. Consequently, the court allowed imposition of reciprocal discipline and revoked the attorney's license to practice in Wisconsin. *See also In re Morris,* 495 A.2d 1162 (D.C. App.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986).

We find the facts in *Brickle* sufficiently similar to those presented here to warrant a similar conclusion. The respondent had an opportunity to raise his procedural and due process claims before the Court of Appeals, to request a hearing, and to appeal the court's decision. He failed to do so. In view of the fact that the penalty imposed by the federal court was only a fine of $286.80, we cannot say that the Court of Appeals' disciplinary procedures were so lacking in due process as to prevent this Court from imposing reciprocal discipline pursuant to Article VI, Section 28–A.

#### C.

■ The respondent also contends that the imposition of reciprocal discipline would result in a grave injustice within the meaning of Article VI, Section 28–A(e)(3). The respondent relies primarily on the fact that he was unable to secure a transcript of his oral argument before the Court of Appeals for submission to the Hearing Panel in this proceeding.

The record shows that the respondent presented oral arguments before the Court of Appeals on May 2, 1988. The court's decision was rendered on July 29, 1988, and this Court was notified of the disciplinary action in early December of 1988. On March 10, 1989, the respondent requested a transcript, but was advised that the tape recording of his argument had been erased ninety days after judgment [11] and that, as a consequence, no transcript could be provided.

It is undisputed, however, that the respondent's oral argument contained the same misstatement as his brief. The respondent acknowledges as much in his brief before this Court: "[T]his counsel simply took the exact words from his brief and presented them in oral argument." The failure to obtain a copy of the tape of the oral argument before the Court of Appeals is of no consequence in view of the respondent's admissions. Accordingly, no grave injustice exists which would preclude us from imposing reciprocal discipline in this case.

#### IV.

■ Finally, the respondent contends that even if reciprocal discipline is warranted in this case, the recommendation of the Committee exceeds the discipline imposed by the Court of Appeals. The federal court levied a monetary sanction in the amount of $286.80. The Committee recommends imposition of a fine in that amount and a public reprimand. The respondent contends that the imposition of a public reprimand is an impermissible increase in the disciplinary sanctions under Article VI, Section 28–A.

■ Article VI, Section 28–A(e) provides that at the conclusion of the proceedings below, "the Hearing Panel *shall refer the matter* to the supreme court of appeals *with the recommendation that the same discipline be imposed* by the supreme court *as was imposed by the foreign jurisdiction* unless it is determined by the Hearing Panel or the court that" one or more of

---

**11.** Apparently this is standard procedure in the Court of Appeals, which maintains no permanent record of oral arguments.

the stated exceptions apply.[12] (Emphasis added). Other jurisdictions with similar rules hold that such a provision requires imposition of the identical sanction imposed by the other jurisdiction in the absence of one of the enumerated exceptions. *People v. Gilson,* 780 P.2d 1088 (Colo.1989); *People v. Bradbury,* 772 P.2d 46 (Colo.1989); *In the Matter of Disciplinary Proceedings Against Murray,* 143 Wis.2d 64, 420 N.W.2d 369 (1988); *In the Matter of Disciplinary Proceedings Against Heilgeist,* 124 Wis.2d 773, 370 N.W.2d 270 (1985). *See also In the Matter of Velasquez,* 507 A.2d 145 (D.C.App.1986); *Office of Disciplinary Counsel v. Hurley,* 71 Haw. 254, 787 P.2d 688 (1990); *Office of Disciplinary Counsel v. Smith,* 71 Haw. 39, 780 P.2d 87 (1989); *In the Matter of Stier,* 112 N.J. 22, 547 A.2d 1127 (1988); *In the Matter of Kaufman,* 81 N.J. 300, 406 A.2d 972 (1979); *Carter v. Cole,* 577 A.2d 669 (R.I.1990). If the Committee believes one of these exceptions is applicable, it must make appropriate findings.

Imposition of an additional sanction would be justified if there were a showing that the attorney's misconduct warranted "a substantially different type of discipline[.]" Article VI, Section 28–A(e)(4). There was no such showing here, however, and the Committee admits that it made no findings warranting an increased penalty. Consequently, Article VI, Section 28–A(e)(4) provides no basis for not imposing the same sanctions imposed by the Court of Appeals.

The Committee does argue that it is without authority to recommend the imposition of monetary sanctions except as an adjunct to other disciplinary measures, such as reprimand, suspension, or annulment. In reciprocal discipline cases, however, Article VI, Section 28–A(e) not only authorizes, but requires the Committee to recommend whatever discipline was imposed by the foreign jurisdiction. This obviously can include a fine or double costs as is the case here. We are authorized under this section to impose the discipline found in the other jurisdiction. We see no reason why the Committee cannot make such a recommendation in a reciprocal discipline case. Accordingly, we conclude that the Committee failed to show a sufficient reason for increasing the penalty imposed by the Court of Appeals.

V.

In sum, we find no justification for not imposing the identical sanction imposed by the Court of Appeals. We adopt the Committee's recommendation that the respondent be fined $286.80 and assessed the costs of this disciplinary proceeding. We reject, however, the Committee's recommendation that the respondent be publicly reprimanded as well.

Fine and costs.

---

**12.** For the text of Article VI, Section 28–A(e), see note 7, *supra.*